IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD L TSOSIE,** : | |
| : | |
| **Plaintiff** : | |
| : | CIVIL NO. 3:CV-12-0893 |
| **v.** : | |
| : | (Judge Caputo) |
| **UNITED STATES** : | |
| : | |
| **Defendant** : | |

**M E M O R A N D U M**

## I.     Introduction

The pro se plaintiff, Ronald Tsosie filed a Federal Tort Claim (FTCA) action, alleging that Bureau of Prisons (BOP) officers applied ambulatory restraints too tightly after extracting him from his Special Management Unit (SMU) cell.  He suffers from permanent scarring and numbness in his hands and wrists following this incident.  The United States has filed for summary judgment based on Mr. Tsosie's failure to make a prima facie showing of negligence.  Mr. Tsosie has not opposed the motion.

For the reasons that follow, the United States motion for summary judgment will be granted and the Complaint dismissed.

## II.    Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a). "A factual dispute is material if it might affect the outcome of the suit under governing law." *Lupyan v. Corinthian Colls. Inc.,* 761 F.3d 314, 317 (3d Cir. 2014)(citing *Doe v. Luzerne Cnty.*, 660 F.3d 169, 175 (3d Cir. 2011)). The court "must view all evidence and draw all inferences in the light most favorable to the non-moving party," and we will only grant the motion if "no reasonable juror could find for the non-movant." *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).

At summary judgment the moving party must identify evidence that demonstrates an absence of a genuine issue of material fact. *Budhun v. Reading Hosp. and Medical Cntr.*, 765 F.3d 245, 251 (3d Cir. 2014)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The movant must support his position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by showing that the nonmoving party "failed to make a sufficient showing to establish the existence of an element essential" to that party's case. *Celotex*, 477 U.S. at 322, 106. S.Ct. at 2552.

A movant's burden persists even when a motion for summary judgment is unopposed. Summary judgment may not be granted only on the basis that the motion is unopposed. Even if unopposed, summary judgment may only be granted when the moving party shows that it is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anchorage Assoc. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990).

### III.     Allegations of the Complaint

In his Complaint, Mr. Tsosie alleges that USP-Lewisburg staff used excessive force against him when extracting him from his SMU cell after he spit on an officer who was escorting him from the showers.  (Doc. 1, Compl.)  Approximately an hour later, a calculated use of force team arrived at Mr. Tsosie's SMU cell.  He complied with all orders to facilitate his removal from the cell.  He place his hands in the food slot of his cell door to allow staff to remove him from his cell and escort him to the shower area where he was strip searched and placed in additional restraints.  (*Id.*)

Mr. Tsosie claims staff negligently applied his restraints, they were "extremely tight that it cut into my skin which started to bleed."  (*Id.*, ECF p. 4.)  Even though Nurse Heather L. declared his restraints were alright, they were not as he was "clearly bleeding."  (*Id.*)  He claims his belly chain "around his chest [was] pulled extremely tight," and when one team member "could not get the chain to a certain link, he violently started yanking on the chain."  (*Id.*)  He alleges another team member bent his right hand back causing him extreme pain.  (*Id.*)

When removed from the strip search area, Mr. Tsosie claims he was escorted to an unsanitary and extremely hot cell.  (*Id.*)  The use of force team allegedly slammed him into the bed and then left.  (*Id.*)  Mr. Tsosie avers he was unable to breathe or move without experiencing pain.  He was also unable to use the toilet while his hands were restrained.  When the Lieutenant and Physician Assistant checked in on him, they refused to loosen his restraints even though his wrists were bleeding and his hands were purple and swollen.

(*Id*.) At the next restraint check, conducted by Lieutenant Johnson and PA Price, his restraints were checked and removed. (*Id*.)

Mr. Tsosie claims he still has scars from the handcuffs, no feeling in his hands and damage to his wrists. (*Id*.) He claims BOP staff failed to follow Program Statement 5566.06 and the Geneva Convention. He contends the Government breached his "special relationship status" as a prisoner and a Native American Indian. (*Id*.)

IV. **Statement of Undisputed Facts**[1]

The following facts are undisputed and are taken from the defendants' statements of material facts and supporting documentation, including a video of the May 31, 2011 cell extraction.[2]

A. **The May 31, 2011, Planned Use of Force Event and Application of Restraints.**

A BOP incident report summarizes the incident on May 31, 2011. (Doc. 30, Defendant's Statement of Undisputed Material Facts (DSMF), ¶ 25; *see also* Doc. 30-1, ECF p. 36.)

> Tsosie ... assaulted a staff member by spitting on the front of his shirt as the cell door was closing. The inmate was secured into a cell and continued to display signs of imminent violence towards

---

[1] On March 24, 2014, the court issued an order granting Mr. Tsosie an enlargement of time to file his opposition materials. (Doc. 34.) To date, Mr. Tsosie has not responded to the United States' Motion for Summary Judgment. Therefore, Defendant's statement of material facts are deemed admitted. Pa. M.D. LR 56.1.

[2] The videodisc (Doc. 27) was submitted under seal to protect Mr. Tsosie's privacy rights. The video has been made available for Mr. Tsosie's review.

-4-

> staff. The Warden was informed of the situation and authorized a Use of Force Team to place the inmate into ambulatory restraints due to his assault on staff. The calculated use of force began at approximately 12:21 p.m. with confrontation avoidance proving effective. The inmate was removed from the cell, metal detected, visually searched, placed into new clothing, and medically assessed, placed into ambulatory restraints and escorted to D-Block cell #103. The inmate received no injuries during this use of force. No staff injuries were reported.

(*Id*.) The video recording of the incident (Doc. 27) and the Government's exhibits provides greater detail as to the events of that day.

At approximately 12:17 p.m. Lieutenant Carrasquillo briefed the team as to their task, checked their equipment and confirmed their ability to participate in the planned use of force event. (DSMF ¶ 38.) Nurse Ladisic, RN, accompanied the use of force team. (Doc. 27.) The team proceeded to Mr. Tsosie's SMU cell. A counselor accompanying the team asked Mr. Tsosie whether he would cooperate with the officers. Mr. Tsosie replied affirmatively. (*Id.*) After placing his cuffed hands through the opening of the cell door, Mr. Tsosie was removed from the cell without incident. Seven and a half minutes later, the team escorted Mr. Tsosie to the shower area where his clothes were removed, he was visually searched, scanned with a metal detector, and placed in a fresh security outfit. Approximately fourteen minutes into the video, the team member attempting to connect the waist chain to Mr. Tsosie's handcuffs remarked that Mr. Tsosie was "fighting" him, making the application of ambulatory restraints more difficult. The Lieutenant instructed Mr. Tsosie not to resist the team threatening he would be placed in four point restraints if he did not comply. (*Id*. and DSMF ¶¶ 43 - 45.) Mr. Tsosie replied that he was not fighting the team. (Doc. 27.) Approximately thirty seconds later the officer secured all of Mr. Tsosie's restraints and the Lieutenant checked their placement and tightness. (Doc. 27 and DSMF

¶ 46.)  No team member yanked on Mr. Tsosie's waist chain and Mr. Tsosie is not seen recoiling or being pushed in any direction by any team member.  (Doc. 27.)  Nurse Ladisic then checked Mr. Tsosie's restraints.  (Doc. 27 and DSMF ¶ 26.)  She reported that Mr. Tsosie had "[g]ood distal pulses in all extremities and capillary refill <2 seconds.  No signs of trauma noted.  Verbalized no medical complaints."  (*Id*. at ¶ 27; Doc. 30-1, ECF pp. 38-39.)

Mr. Tsosie was then escorted out of the shower area.  (Doc. 27.)  The team stopped momentarily to photograph Mr. Tsosie.  (*Id*.)  Mr. Tsosie was then escorted to D-Block and placed in cell D 103.  (*Id*. and DSMF ¶¶ 48 - 51.)  No other inmate was in the cell.  The lower bunk had a mattress on it.  The floor and walls of the cell appeared to be clean.  The cell had a desk and commode attached to the wall.  (Doc. 27.)  Several team members escorted Mr. Tsosie into the cell.  He was placed on the lower bunk in the supine position.  No loud bang or shouts are heard on the video.  (*Id*.)  Mr. Tsosie was silent during this process.  (*Id*.)  Approximately eighteen minutes into the video, Mr. Tsosie is seen lying face up on the mattress in the lower bunk of the cell.  Although in ambulatory restraints, Mr. Tsosie raised both forearms, allowing his wrists and hands to be viewed.  No blood is visible on his clothing or skin.  (Doc. 27.)  The team exited the cell and closed the door.  (DSMF ¶ 53.)  The Lieutenant ordered the team back to the conference area.  (Doc. 27.)  Approximately twenty minutes from the start of the event, Lieutenant Carrasquillo debriefed the team.  The Lieutenant noted that when the team originally approached Mr. Tsosie's cell, he was already in handcuffs that had been applied behind his back.  The Lieutenant

pointed out that Mr. Tsosie somehow managed to slip his handcuffs from behind his back to the front.  (*Id*. and DSMF ¶ 54.)

During the twenty-four hour period that Mr. Tsosie was in ambulatory restraints, the security staff checked his restraints every fifteen minutes.  (DSMF ¶¶ 29 - 30; *see also* Doc. 30-1, ECF pp. 41 - 44.)  The Lieutenant checked on Mr. Tsosie every two hours while he was in ambulatory restraints.  The Lieutenant noted whether the restraints had had the desired effect, whether Mr. Tsosie had used the bathroom, described his current behavior and recommended whether he should remain in restraints or that they be removed.  (DSMF ¶ 31; *see also* Doc. 30-1, ECF pp. 46 - 49.)  Medical staff also monitored Mr. Tsosie every two hours, assessed his restraints, current condition, and noted any injuries.  (DSMF ¶ 32; *see also* Doc. 30-1, ECF pp. 51 - 53.)  Every entry by the medical staff noted that Mr. Tsosie had no apparent injuries.  (DSMF ¶ 33.)

The BOP conducted an "After Action Review" of the May 31, 2011 incident and concluded that the use of force and restraints were reasonable and appropriate.  (DSMF ¶ 34; *see also* Doc. 30-1, ECF pp. 55 - 56.)

### B.     Mr. Tsosie's Administrative Tort Claim

Mr. Tsosie submitted an administrative tort claim (TRT-NER-2012-00764) for personal injury following the May 31, 2011 incident.  He sought $2,500.00 in damages and alleged staff used excessive force against him resulting in scars and permanent injury to his wrists.   (DSMF ¶ 35)  The BOP Northeast Regional Counsel denied Mr. Tsosie's claim finding that the use of force was appropriate in response to Mr. Tsosie's "violent,

aggressive and noncompliant behavior," and was in compliance with the BOP Program Statement 5566.06, *Use of Force and Application of Restraints*, and that there was no evidence of injury. (DSMF ¶ 36; *see also* Doc. 30-1, ECF p. 58.)

**V.   Discussion**

    **A.   Mr. Tsosie's FTCA Claim**

The FTCA, 28 U.S.C.A. § 2671, *et seq.,* is a limited waiver of sovereign immunity with respect to tort claims for money damages against the United States. *Millbrook v. United States,* ___ U.S. ___, ___, 133 S.Ct. 1441, 1442, 185 L.Ed.2d 531 (2013); *Sargent v. United States*, No. 15-1083, 2015 WL 4189973, *1 (3d Cir. July 13, 2015). Specifically, the FTCA gives district courts jurisdiction over civil actions against the United States for "personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employement," if a private person would be liable to the claimant for the same. 28 U.S.C. § 1346(b)(1). The Supreme Court of the United States has interpreted that statute to mean that "the United States waives sovereign immunity 'under circumstances' where local law would make a '*private person*' liable in tort." *United States v. Olson*, 546 U.S. 43, 44, 126 S.Ct. 510, 511, 163 L.Ed.2d 306 (2005) (emphasis in original). Because Mr. Tsosie's claim of negligence arose in Pennsylvania, Pennsylvania substantive law applies. *See Toole v. United States*, 588 F.2d 403, 406 (3d Cir. 1978).

In Pennsylvania, to prevail in a negligence action, a plaintiff must demonstrate the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant

-8-

breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 602 Pa. 346, 354, 980 A.2d 502, 506 (Pa. 2009). Under Pennsylvania law, a plaintiff is required to show that the defendant's negligence was the proximate cause of his injury by a preponderance of the evidence. *Baum v. United States*, 541 F.Supp. 1349, 1351 (M.D. Pa. 1982). Furthermore, Pennsylvania law defines proximate cause as causation which was a substantial factor in bringing about the injury. *Hamil v. Bashline*, 481 Pa. 256, 392 A.2d 1280, 1284 (Pa. 1978).

In cases that involve federal prisoners, it has been recognized that the "BOP must exercise ordinary diligence in keeping prisoners safe and free from harm." *Fiore v. Holt*, 435 F. App'x 63, 66 (3d Cir. 2011); *see also* 18 U.S.C. § 4042 (prison officials have a duty of "ordinary diligence to keep prisoners safe from harm"). Here, Mr. Tsosie argues BOP staff were negligent in their application of the handcuffs which caused him pain, bleeding and scarring. He also claims he was injured when staff slammed him into the D 103 bed and left him. The government correctly argues that based upon the uncontested summary judgment record, Mr. Tsosie cannot satisfy the elements of his negligence claims.

As to the first element, 18 U.S.C. § 4042 requires the BOP to provide for the safekeeping, care, and subsistence of all federal prisoners. *Turner v. Miller*, 679 F. Supp. 441, 443 (M.D. Pa. 1987). There is no evidence the prison staff breached that duty. The video recording of Mr. Tsosie's cell extraction, search, and placement in cell D 103 refutes the unsupported allegations of the Complaint. Mr. Tsosie astutely agreed to cooperate with the calculated use of force team at the onset of the event. The video definitely reveals

that Mr. Tsosie was not violently shaken or jerked by his restraints during this event as suggested in the Complaint.  To the contrary, the only evidence of any actual use of force against Mr. Tsosie was during the brief period of time when he struggled against the efforts of the officer applying the restraints.  (Doc. 27.)  Once the Lieutenant ordered Mr. Tsosie to stop resisting the team, he complied and the restraints were quickly applied.  This struggle was brief and did not involve officers twisting, pulling or yanking him by his appendages or the restraints.  Likewise, the unchallenged video shows a cooperative Mr. Tsosie being guided to a supine position on the D 103 cell bunk.  There are no jerky movements visible or no loud noises heard on the video suggesting Mr. Tsosie was brutalized by the calculated use of force team.  Mr. Tsosie has failed to demonstrate the BOP breached its duty to protect him from harm.

Next, to the extent Mr. Tsosie asserts he suffered an injury, wrist pain and numbness after this day, there is no evidence to suggest a causal connection between the team's improper application of the restraints and the alleged injury.  The government correctly notes that the sort of scarring, numbness and pain Mr. Tsosie claims to experience could conceivably be due his own efforts to manipulate his cuffs from behind his back to the front, prior to his encounter with the calculated use of force team.  Therefore, Mr. Tsosie cannot show that his alleged injuries, should they exist, were caused by the improper application of ambulatory restraints rather than his own actions that day.

Next, as to the fourth element of Mr. Tsosie's negligence claim, he has failed to prove that he suffered any actual injury as a result of his interaction with the calculated use of force team, the application of ambulatory restraints, or the restraints themselves during the twenty-four hours he was wearing them.  In addition, the record is devoid of any

evidence of such an injury. Mr. Tsosie does not point to any medical record, photograph or any portion of the video demonstrating when the alleged injuries took place, or proof of any of the alleged injuries. The video itself does not support a finding of any interaction with the team that would produce the type or severity of injury claimed by Mr. Tsosie. Moreover, the government has come forward with medical and security reports by individuals who repeatedly checked on Mr. Tsosie while he was in restraints. None of these reports reflect Mr. Tsosie suffered any any injuries, ailments or voiced any complaints concerning his restraints being too tight. Thus, there is no evidence to suggest Mr. Tsosie suffered any physical harm as a result of his encounter with the use of force team that day.

Finally, Mr. Tsosie's claim for infliction of emotional distress fails due to his lack of physical injury. The Prison Litigation Reform Act restricts a prisoner's ability to recover compensatory damages for solely mental and emotional injuries. "No Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The Third Circuit Court of Appeals in *Mitchell v. Horn*, 318 F.3d 523, 533 (3d Cir. 2003), held that in order to satisfy § 1997e(e)'s physical injury requirement, a plaintiff must demonstrate a less than significant, but more than *de minimis* physical injury. *Id.* at 536. Thus, the PLRA precludes Mr. Tsosie's action for mental and emotional injuries without a showing of a prior physical injury.

As Mr. Tsosie has not established that the United States breached its duty to him or that such alleged breach was the proximate cause of any injury, he fails to state a *prima facie* claim of negligence.

-11-

  **B.**  **Mr. Tsosie has No Private Cause of Action under 42 U.S.C. § 14141(a) and 18 U.S.C. § 2340.**

To the extent Mr. Tsosie attempts to bring a criminal action against the United States, the BOP or specific BOP staff members via his complaint, his claim is frivolous because a private individual cannot prosecute a criminal action in federal court, nor compel the state or federal government to investigate or prosecute an alleged crime. *Mikhail v. Kahn*, 991 F.Supp.2d 596, 634 - 35 (E.D. Pa. 2014), *aff'd*, 572 F. App'x 68 (3d Cir. 2014). "[E]ven when individuals are wronged in a manner cognizable under criminal law, they 'do not have a constitutional right to the prosecution of alleged criminals.'" *Id.* at 637 (quoting *Capogrosso v. Supreme Court of N.J.*, 588 F.3d 180, 184 (3d Cir. 2009)).  Thus, Mr. Tsosie's attempt to hold the United States criminally liable under the identified statutes fails to state a claim for which relief can be granted.

**V.**  **Conclusion**

Based on the foregoing, the United States' Motion for Summary Judgment will be granted.  An appropriate order will be entered.

            /s/ A. Richard Caputo
            **A. RICHARD CAPUTO**
            **United States District Judge**

**Date: October 23, 2015**